IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL W. DAVID, II and SHARON K. DAVID | : : : | CIVIL ACTION NO. |
| vs. | : : | |
| UNITED STATES OF AMERICA | : | |

## COMPLAINT WITH CERTIFICATE OF MERIT

1.  The plaintiff Paul W. David II (hereinafter "Mr. David") is an adult individual who resides at 249 South Ninth Street, Lehighton, PA 18235.

2.  The plaintiff Sharon K. David (hereinafter "Mrs. David") is an adult individual who resides at 249 South Ninth Street, Lehighton, PA 18235 and is the wife of Mr. David.

3.  Mr. David and Mrs. David shall collectively be referred to as "the plaintiffs."

4.  The defendant United States of America (hereinafter "the defendant"), through its agency, the U.S. Department of Veterans Affairs (hereinafter "the VA"), operates the Wilkes-Barre Veterans Affairs Medical Center, which is located at 1111 East End Blvd., Wilkes-Barre, PA 18711 (hereinafter "the W-B VA").

5.  This action against the defendant is being brought under the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq.* and 28 U.S.C. §1346(b)(1), for the negligence and professional malpractice in connection with the medical care provided to Mr. David at the W-B VA.

6.  The plaintiffs have fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act. Standard Form 95 for Mr. David's claim is attached hereto and marked Exhibit "1." Standard Form 95 for Mrs. David's claim is attached hereto and

marked Exhibit "2." These forms were received by the VA on February 6, 2018. Mr. David has stated in his Standard Form 95 that he has suffered damages in the amount of $10,000,000.00. Mrs. David has stated in her Standard Form 95 that she has suffered damages in the amount of $5,000,000.00

7.  On October 24, 2014, a CT scan of the abdomen and pelvis with and without contrast (hereinafter "the 10/24/14 CT scan") was performed on Mr. David at the W-B VA at the request of Jyothi Veera, M.D., a staff internist (hereinafter "Dr. Veera").

8.  The 10/24/14 CT scan was read by Kapila Vora, M.D., a staff radiologist and employee of the VA (hereinafter "Dr. Vora"). Dr. Vora was acting in the course of and within the scope of her employment with the VA when she read and reported findings with regard to the 10/24/14 CT scan.

9.  Dr. Vora's impression of the 10/24/14 CT scan was "Increase in size of the liver nodule since prior to CT of chest obtained on 3/14/2014. It does not have characteristic of cyst or definite characteristic of hemangioma. MRI without and with contrast is recommended to rule out hepatoma."

10. In fact, Dr. Vora should have observed and reported after reading the 10/24/14 CT scan that Mr. David had a solid lesion within the mesentery. The mesentery is a continuous set of tissues that attaches the intestines to the abdominal wall. It was a deviation from the standard of care for Dr. Vora to fail to observe and report the lesion after reading the 10/24/14 CT scan.

11. On November 24, 2014, an MRI of the abdomen with and without contrast (hereinafter "the 11/24/14 MRI scan") was performed on Mr. David at the W-B VA at the request of Dr. Veera.

2

12. The 11/24/14 MRI scan was read by Christopher N. Chapman, M.D., a staff radiologist and employee of the VA (hereinafter "Dr. Chapman"). Dr. Chapman was acting in the course of and within the scope of his employment with the VA when he read and reported findings with regard to the 11/24/14 MRI scan.

13. Dr. Chapman's impression of the 11/24/14 MRI scan was "Right hepatic dome lesion correlating with CT scan with characteristics consistent with benign hemangioma. Tiny subcentimeter cyst within the left lobe anteriorly. Exam otherwise unremarkable."

14. In fact, Dr. Chapman should have observed and reported after reading the 11/24/14 MRI scan that there was a mesenteric lesion. It was a deviation from the standard of care for Dr. Chapman to fail to observe and report the mesenteric lesion.

15. Had the staff radiologists properly read the 10/24/14 CT scan or the 11/24/14 MRI, treating physicians would have taken steps to determine the presence of a neuroendocrine (also called a carcinoid) tumor in the mesentery. Once identified as a neuroendocrine tumor, surgery would have been performed to remove it. If this were a single tumor with no evidence of secondary disease and it could be completely removed, the surgery would have potentially been a curative treatment. In the alternative, such surgery is designed to reduce the amount of cancer cells in the body and is undertaken to improve symptoms and manage the disease. Surgery is then used in combination with other types of treatment.

16. Mr. David underwent a colonoscopy on June 10, 2015. Following the colonoscopy, Mr. David had diarrhea multiple times per day. At times, the chronic diarrhea was severe with bowel movements every hour. Mr. David was exhibiting

symptoms associated with carcinoid syndrome. Carcinoid syndrome occurs when a carcinoid tumor secretes chemicals, such as serotonin, causing a variety of symptoms including diarrhea. Mr. David suffered from this diarrhea from shortly after June 10, 2015, to February 22, 2016.

17. Because of the failure of the VA radiologists to properly read the imaging studies of October 24, 2014, and November 24, 2014, Mr. David's healthcare providers did not know that Mr. David had a neuroendocrine tumor of the small bowel region. They were thinking that Mr. David was either suffering from irritable bowel syndrome or an acute exacerbation of ulcerative colitis. In the past, Mr. David had been diagnosed as suffering from ulcerative colitis.

18. On February 5, 2016, Mr. David saw Andrew Schwartz, M.D., a gastroenterologist (hereinafter "Dr. Schwartz"). By that time, Mr. David was having 15 to 20 bowel movements a day, had lost 40 to 45 pounds, and was having left lower quadrant pain. Dr. Schwartz was considering performing a colonoscopy.

19. A CT scan of the abdomen and pelvis without contrast and an MRI of the abdomen with and without contrast were performed on February 9 and 10, 2016. The CT scan impression included "3.6 cm central mesenteric soft tissue mass. Differential includes carcinoid versus malignant/neoplastic lymphadenopathy." The MRI impression stated, among other things, "Patient has a mesenteric mass which is incompletely imaged on the current study. The visualized portion demonstrates only very mild enhancement within this. Nevertheless, the imaging appearance is suspicious for carcinoid or desmoid tumor."

20. Dr. Schwartz performed a colonoscopy on February 17, 2016. According to Dr. Schwartz's report, the colonoscope was advanced no farther than 30 cm to the sigmoid colon, and the doctor found severe colitis in the sigmoid colon, rectosigmoid junction, and the rectum.

21. Following the colonoscopy, Mr. David had severe abdominal pain with diarrhea, fever, nausea, and vomiting. He was seen in the emergency room of Lehigh Valley Hospital (hereinafter "the LVH") on February 22, 2016.

22. A CT scan of the abdomen and pelvis with contrast was performed on February 22, 2016, at the LVH. The radiologist found a "mild pneumoperitoneum with gas in the anterior left upper quadrant and adjacent to the proximal descending colon with significant surrounding infiltration and nonloculated fluid. A dot of gas is seen within the wall of the proximal left colon which may represent site of colonic perforation."

23. As a result of the imaging finding of possible colonic perforation, an exploratory laparotomy was performed on February 22, 2016 at the LVH (hereinafter "the laparotomy"). The following occurred during the course of the laparotomy: a significant amount of purulent fluid was found in the abdominal cavity; a significant amount of mass was found within the small bowel and mesentery; there was a perforation at the splenic flexure of the large bowel; a subtotal colectomy was performed; a nodule was noted on the surface of the liver and resected; and an ileostomy was performed.

24. The following was found from the specimens taken during the laparotomy: the small bowel specimens had three well differentiated neuroendocrine (carcinoid) tumors; neuroendocrine tumor invaded into the mesentery; metastatic tumor to lymph

nodes; fulminant diffuse active chronic colitis; and metastatic neuroendocrine tumor in the liver caused by metastasis from the small bowel neuroendocrine tumor. The pathologist commented that "serotonin may also produce colitis and may represent a causative factor."

25. Following the laparotomy, Mr. David was transferred to the ICU where he developed sepsis and renal failure. More surgery was needed after the ileostomy developed ischemia. Mr. David was in the LVH from February 22, 2016, to June 1, 2016 (hereinafter "the LVH hospitalization").

26. Since the LVH hospitalization, Mr. David has been generally weak and has had many issues with his ileostomy. He suffers from a widely metastatic small bowel neuroendocrine tumor.

27. Failure to diagnose the neuroendocrine tumor that Mr. David was suffering from by October or November of 2014, caused or increased the likelihood of causing, among other things, the following: increased cancer cells and tumors in the small bowel and mesentery region; metastasis to lymph nodes, liver, and elsewhere; carcinoid syndrome and the symptoms associated with it; excessive serotonin and other secretions which caused ulcerative colitis or aggravated pre-existing ulcerative colitis; fulminant ulcerative colitis which led to a perforation; the need for a subtotal colectomy and ileostomy; pulmonary emboli associated with the severe ulcerative colitis; sepsis and kidney failure; wide spread metastasis; symptoms associated with these disorders and problems; hepatic disease; inability to undergo further surgeries to repair abdominal problems; and reduced life expectancy.

28. The conditions, problems, and symptoms described in paragraph 27 have substantially affected Mrs. David's relationship with her husband, Mr. David.

29. This suit has been timely filed in that the plaintiffs served notice of their claim on the U.S. Department of Veterans Affairs on February 6, 2018, less than two years from the date the plaintiffs could have for the first time learned of the presence of a mesenteric lesion.

30. As a result of the negligence, carelessness, and breaches of standards of care of the defendant, by and through its employees, Mr. David has:

    a. sustained serious and permanent personal injuries in and about his body;

    b. incurred medical expenses and other monetary damages, and will continue to incur medical expenses and other monetary damages in the future;

    c. endured pain, suffering and mental anguish, and will continue to endure pain, suffering and mental anguish in the future;

    d. suffered a loss of the enjoyment of life, and will continue to suffer a loss of the enjoyment of life in the future; and

    e. suffered a substantially shortened life expectancy.

31. As a result of the negligence, carelessness, and breaches of standards of care of the defendant, by and through its employees, Mrs. David has been and continues to be deprived of the consortium, comfort, society, companionship, services, and assistance of her husband.

WHEREFORE, the plaintiffs demand judgment against the defendant for a sum of $15,000,000.00 plus costs.

*[signature]*

ARMIN FELDMAN, ESQUIRE
Attorney for Plaintiffs
Attorney I.D. #22816
P.O. Box 537
Lehighton, PA  18235
610-379-4044
FAX: 610-379-4033
E-MAIL: arminfeldman@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL W. DAVID, II and SHARON K. DAVID | CIVIL ACTION NO. |
| vs. | |
| UNITED STATES OF AMERICA | |

### Certificate of Merit as to Defendant United States of America

I, Armin Feldman, Esquire, certify that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill, or knowledge exercised or exhibited by licensed professionals, Kapila Vora, M.D. and Christopher N. Chapman, M.D., who were employed by the defendant United States of America, by and through its agency, the U.S. Department of Veterans Affairs, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about harm. The claim that the defendant United States of America deviated from an acceptable professional standard is based on allegations that a licensed professional for whom this defendant is responsible deviated from an acceptable professional standard.

Date: 9/7/2018

Armin Feldman, Esquire
Attorney for Plaintiffs
Attorney I.D. #22816
P.O. Box 537
Lehighton, PA 18235
(610) 379-4044
FAX: (610) 379-4033